```
                                            ┌─────────────────────────────┐
                                            │            FILED            │
                                            │  CLERK, U.S. DISTRICT COURT  │
                                            │   ┌─────────────────────┐    │
                                            │   │    01/23/2020       │    │
                                            │   └─────────────────────┘    │
                                            │ CENTRAL DISTRICT OF CALIFORNIA│
                                            │ BY:        CLO       DEPUTY   │
                                            └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2019 Grand Jury

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

RICARDO ALEJANDRO BAZAN,
  aka "Ricky,"
      "Chuco," and
      "Chu,"
NOEL GRANADOS,
  aka "Noel,"
      "Big Show," and
      "Show,"
DOROTEO MENDOZA TORREZ,
  aka "Guerro" and
      "Guerito,"
EDULFO LEYVA PEREZ,
  aka "Gallo,"
LADELL LAVELL MCPHERSON,
  aka "Dooley,"
MANUEL IGNACIO RUIZ,
  aka "Manny,"
      "Manual,"
      "Mandy," and
      "Fresh,"
ESTEVAN ORTIZ,
  aka "Steve,"
      "Stevie,"
      "Wonder," and
      "Little Man,"
FAUSTO BARRAZA,
ALBERTO VERDUZCO,
WILLIAM DENIZ CASTELLANOZ,
  aka "Willy,"

ED CR No. 5:20-cr-00019

I N D I C T M E N T

[21 U.S.C. § 846: Conspiracy to
Distribute and to Possess with
Intent to Distribute Controlled
Substances; 21 U.S.C.
§§ 841(a)(1), (b)(1)(A),
(b)(1)(B), (b)(1)(C): Distribution
and Possession with Intent to
Distribute of Controlled
Substances; 18 U.S.C. § 922(g)(1):
Felon in Possession of Ammunition;
18 U.S.C. § 924(d)(1), 21 U.S.C.
§ 853, 28 U.S.C. § 2461(c):
Criminal Forfeiture]

```
1           "Willo," and
            "Fatty,"
2   REGINALD LOUIS ROBINSON,
      aka "El Cagon" and
3           "Reggie,"
    STERLING TORRES-VERDUZCO,
4     aka "Primo,"
            "Fatty's Cousin," and
5           "Willy's Cousin,"
    RAFEAL AKINYEMI FAWEHINMI,
6   PHILLIP REGINALD HURT,
      aka "Dude,"
7   JOSEPH GEORGE MARTINEZ,
      aka "Johnny,"
8   SHANNON RAY WEBB,
      aka "Ray,"
9   JONATHAN DARNELL CAREY,
    CHARLES DWIGHT FINLEY,
10    aka "Nephew,"
    MARGARITO LUJANO, JR.,
11    aka "Cousin,"
    GLENN CHRISTOPHER ESTRADA,
12    aka "Old Man,"
    ENRIQUE GUZMAN ROMERO,
13  EMANUEL ROBERT MCMEANS, III,
    CARLTON TERRELL YOUNG, and
14  JASON DONNELL BELTON,

15           Defendants.
```

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about May 24, 2018, in Riverside County and San Bernardino County, each within the Central District of California, and elsewhere, defendants RICARDO ALEJANDRO BAZAN, also known as ("aka") "Ricky," "Chuco," and "Chu"; NOEL GRANADOS, aka "Noel," "Big Show," and "Show"; DOROTEO MENDOZA TORREZ, aka "Guerro" and "Guerito" ("MENDOZA TORREZ"); EDULFO LEYVA PEREZ, aka "Gallo" ("LEYVA PEREZ"); LADELL LAVELL MCPHERSON, aka

2

"Dooley"; MANUEL IGNACIO RUIZ, aka "Manny," "Manual," "Mandy," and "Fresh"; ESTEVAN ORTIZ, aka "Steve," "Stevie," "Wonder," and "Little Man"; FAUSTO BARRAZA; ALBERTO VERDUZCO ("A. VERDUZCO"); WILLIAM DENIZ CASTELLANOZ, aka "Willy," "Willo," and "Fatty"; REGINALD LOUIS ROBINSON, aka "El Cagon" and "Reggie"; STERLING TORRES-VERDUZCO, aka "Primo," "Fatty's Cousin," and "Willy's Cousin" ("S. VERDUZCO"); RAFEAL AKINYEMI FAWEHINMI; PHILLIP REGINALD HURT, aka "Dude"; JOSEPH GEORGE MARTINEZ, aka "Johnny"; SHANNON RAY WEBB, aka "Ray"; JONATHAN DARNELL CAREY; CHARLES DWIGHT FINLEY, aka "Nephew"; MARGARITO LUJANO, JR., aka "Cousin"; GLENN CHRISTOPHER ESTRADA, aka "Old Man"; ENRIQUE GUZMAN ROMERO; EMANUEL ROBERT MCMEANS, III; CARLTON TERRELL YOUNG; and JASON DONNELL BELTON, and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and to possess with intent to distribute the following controlled substances:

1.   at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II);

2.   at least 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(ii)(II);

3.   at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii);

1    4.   at least five grams of methamphetamine, a Schedule II
2 controlled substance, in violation of Title 21, United States Code,
3 Sections 841(a)(1), (b)(1)(B)(viii);
4    5.   at least one kilogram of a mixture and substance containing
5 a detectable amount of heroin, a Schedule I narcotic drug controlled
6 substance, in violation of Title 21, United States Code, Sections
7 841(a)(1), (b)(1)(A)(i);
8    6.   at least 100 grams of a mixture and substance containing a
9 detectable amount of heroin, a Schedule I narcotic drug controlled
10 substance, in violation of Title 21, United States Code, Sections
11 841(a)(1), (b)(1)(B)(i); and
12    7.   a mixture and substance containing a detectable amount of
13 heroin, a Schedule I narcotic drug controlled substance, in violation
14 of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).
15 B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
16    ACCOMPLISHED
17    The objects of the conspiracy were to be accomplished, in
18 substance, as follows:
19    1.   Defendants MENDOZA TORREZ and LEYVA PEREZ, and others known
20 and unknown, would obtain sources of supply for drugs in Mexico and
21 Colombia, and arrange for the drugs to be delivered to Southern
22 California.
23    2.   Defendants BAZAN, GRANADOS, MCPHERSON, RUIZ, ORTIZ, and
24 BARRAZA, and others known and unknown, would arrange to purchase
25 drugs that had been delivered to Southern California from Mexico and
26 Colombia in order to ship the drugs to other states for further
27 distribution.
28

4

3.    Defendants S. VERDUZCO, FAWEHINMI, and ROMERO, and others known and unknown, would drop off, pick up, and transport drugs within Southern California that had been delivered from Mexico and Colombia.

4.    Defendant ORTIZ, and others known and unknown, would build hidden compartments in vehicles for the purpose of concealing drugs and drug proceeds that would be transported between Southern California and other states.

5.    Defendants BAZAN, GRANADOS, MCPHERSON, RUIZ, ORTIZ, BARRAZA, A. VERDUZCO, CASTELLANOZ, ROBINSON, S. VERDUZCO, CAREY, LUJANO, ESTRADA, ROMERO, and MCMEANS, and others known and unknown, would send drugs from Southern California to other states for further distribution, including by shipping parcels containing drugs via United States Postal Service ("USPS") mail, transporting drugs in hidden compartments in vehicles, and arranging for other co-conspirators to do so.

6.    Defendants HURT, FINLEY, YOUNG, and BELTON, and others known and unknown, would receive drugs sent from Southern California to other states in order to further distribute them.

7.    Defendants A. VERDUZCO, CASTELLANOZ, FAWEHINMI, HURT, FINLEY, and YOUNG, and others known and unknown, would send proceeds or arrange other co-conspirators to send proceeds from the sales of drugs from other states to Southern California.

8.    Defendants BAZAN, GRANADOS, MCPHERSON, ORTIZ, BARRAZA, A. VERDUZCO, CASTELLANOZ, ROBINSON, S. VERDUZCO, MARTINEZ, WEBB, CAREY, LUJANO, and ESTRADA, and others known and unknown, would receive proceeds from the sales of drugs sent from other states to Southern California, including by receiving parcels containing drug proceeds

via USPS mail, transporting drug proceeds in hidden compartments in vehicles, and arranging other co-conspirators to do so.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants BAZAN, GRANADOS, MENDOZA TORREZ, LEYVA PEREZ, MCPHERSON, RUIZ, ORTIZ, BARRAZA, A. VERDUZCO, CASTELLANOZ, ROBINSON, S. VERDUZCO, FAWEHINMI, HURT, MARTINEZ, WEBB, CAREY, FINLEY, LUJANO, ESTRADA, ROMERO, MCMEANS, YOUNG, and BELTON, and others known and unknown to the Grand Jury, committed various overt acts in Riverside County and San Bernardino County, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On or about October 1, 2016, at a post office in Hesperia, California, defendant CAREY mailed a USPS parcel containing approximately 4.995 kilograms of cocaine to Cleveland, Ohio.

2.   On or about November 30, 2016, at a post office in Hesperia, California, defendant CAREY mailed a USPS parcel containing approximately 6 kilograms of cocaine to Birmingham, Michigan.

3.   On or about December 19, 2016, at a post office in San Bernardino, California, defendant CAREY mailed a USPS parcel containing approximately 5 kilograms of cocaine to Niagara Falls, New York.

4.   On or about December 30, 2016, in Victorville, California, defendant CAREY received a USPS parcel containing between approximately $125,000 and $200,000 in drug proceeds.

5.   On or about January 11, 2017, at a post office in Apple Valley, California, defendant CAREY mailed a USPS parcel containing approximately 4.989 kilograms of cocaine to Buffalo, New York.

6

6.   On or about January 26, 2017, at a post office in Victorville, California, defendant CAREY mailed a USPS parcel containing approximately 5.012 kilograms of cocaine to New York, New York.

7.   On or about February 6, 2017, at a post office in San Bernardino, California, defendant ORTIZ received in his P.O. Box a USPS parcel containing drug proceeds.

8.   On or about February 13, 2017, at a post office in San Bernardino, California, defendant ORTIZ received in his P.O. Box a USPS parcel containing drug proceeds, the return address of which was defendant YOUNG's address.

9.   On or about February 13, 2017, using coded language in a series of text messages, defendant YOUNG sent a co-conspirator two addresses for the delivery of cocaine parcels ("Address A" and "Address B").

10.   On or about February 14, 2017, at a post office in Hesperia, California, defendant ORTIZ mailed a USPS parcel containing approximately 2.971 kilograms of cocaine to Address A in Columbia, South Carolina.

11.   On or about February 14, 2017, at a post office in San Bernardino, California, defendant ORTIZ mailed a USPS parcel containing approximately 3.998 kilograms of cocaine to Address B in Columbia, South Carolina.

12.   On or about February 16, 2017, in Columbia, South Carolina, defendant YOUNG and a co-conspirator received and possessed with the intent to distribute the USPS parcel mailed by defendant ORTIZ to Address A, which had originally contained approximately 2.971 kilograms of cocaine.

13.   On or about February 16, 2017, in Columbia, South Carolina, defendant BELTON and a co-conspirator received and possessed with the intent to distribute the USPS parcel mailed by defendant ORTIZ to Address B, which had originally contained approximately 3.998 kilograms of cocaine.

14.   On or about March 3, 2017, in Riverside, California, defendant MARTINEZ received a USPS parcel containing approximately $250,000 in drug proceeds.

15.   On or about March 31, 2017, in Riverside, California, defendant BAZAN delivered approximately 15.026 kilograms of cocaine to defendant CAREY and a co-conspirator to be mailed to other states.

16.   On or about April 1, 2017, at a post office in Adelanto, California, defendant CAREY mailed a USPS parcel containing approximately 5.011 kilograms of cocaine to Chattanooga, Tennessee.

17.   On or about April 4, 2017, in Victorville, California, defendant CAREY received a USPS parcel containing approximately $185,185 in drug proceeds.

18.   On or about April 6, 2017, in Riverside, California, defendant BARRAZA received a USPS parcel containing approximately $96,500 in drug proceeds.

19.   On or about April 28, 2017, in Riverside, California, defendant MARTINEZ received a USPS parcel containing approximately $100,000 in drug proceeds.

20.   On or about April 28, 2017, in San Bernardino, California, defendant S. VERDUZCO received a USPS parcel containing approximately $110,000 in drug proceeds.

21.   On August 8, 2017, in Riverside, California, defendants BAZAN, GRANADOS, and RUIZ met with a co-conspirator from New York (the "New York co-conspirator") to discuss drug trafficking business.

22.   On or about August 9, 2017, using coded language in a telephone call, the New York co-conspirator told defendant GRANADOS that defendant ORTIZ needed to send the New York co-conspirator documentation for a truck that defendant ORTIZ was going to provide for the purpose of transporting contraband from California to New York.

23.   On or about August 9, 2017, using coded language in a series of telephone calls, defendant GRANADOS instructed defendant ORTIZ to call the New York co-conspirator about the documentation for the truck, and defendant ORTIZ said he would provide the necessary documentation.

24.   On or about August 9, 2017, using coded language in a series of telephone calls, defendants ORTIZ and GRANADOS confirmed that defendant ORTIZ had built a hidden compartment for drugs in the truck that the New York co-conspirator would pick up and drive.

25.   On or about August 11, 2017, in Riverside, California, defendant MARTINEZ received a USPS parcel containing approximately $100,000 in drug proceeds.

26.   On or about August 14, 2017, using coded language in a series of telephone calls, defendant GRANADOS instructed defendant FAWEHINMI to go to defendant LEYVA PEREZ's shop in San Jacinto, California to deliver drugs and asked how much defendant GRANADOS owed defendant FAWEHINMI.

27.   On or about August 14, 2017, using coded language in a telephone call, defendant FAWEHINMI told defendant GRANADOS that

defendant LEYVA PEREZ had paid him $400 less than owed for the drugs and accepted defendant GRANADOS's offer to pay the remainder.

28.  On or about August 16, 2017, using coded language in a telephone call, defendant MCPHERSON asked defendant GRANADOS if defendant BAZAN had drug proceeds to give to defendant MCPHERSON.

29.  On or about August 16, 2017, in Moreno Valley, California, defendants MCPHERSON, GRANADOS, and RUIZ met to discuss drug trafficking business.

30.  On or about August 19, 2017, using coded language in a telephone call, defendant BAZAN asked defendant GRANADOS if defendant LUJANO was on his way back to California with drug proceeds.

31.  On or about August 19, 2017, using coded language in a three-way telephone call, defendants GRANADOS and ORTIZ and a co-conspirator discussed defendant ORTIZ attempting to contact defendant HURT and defendant HURT's wife for drug trafficking business, at defendant GRANADOS's direction.

32.  On or about August 20, 2017, using coded language in a series of telephone calls, defendant RUIZ informed defendant GRANADOS that he was unsuccessful in contacting defendant ROBINSON to arrange a drug transaction.

33.  On or about August 20, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that he would arrive at his meeting with defendant RUIZ in a few minutes to conduct a drug transaction.

34.  On or about August 20, 2017, using coded language in a telephone call, defendant RUIZ confirmed to defendant GRANADOS that he had met with defendant ROBINSON earlier that day to conduct a drug transaction.

10

1       35.   On or about September 1, 2017, using coded language in a

2   telephone call, a co-conspirator told defendant GRANADOS that

3   defendant MENDOZA TORREZ wanted to speak to defendant GRANADOS about

4   drug trafficking business.

5       36.   On or about September 1, 2017, using coded language in a

6   telephone call, defendant MENDOZA TORREZ told defendant GRANADOS that

7   he needed to meet with defendant GRANADOS to give defendant GRANADOS

8   information about a shipment of drugs from Mexico or Colombia.

9       37.   On or about September 1, 2017, using coded language in a

10  telephone call, defendant GRANADOS told defendant BAZAN that he had

11  spoken to defendant MENDOZA TORREZ and had good news about a shipment

12  of drugs from Mexico or Colombia.

13      38.   Between on or about September 3, 2017 and September 10,

14  2017, defendant MENDOZA TORREZ traveled to Colombia and Mexico to

15  arrange a shipment of drugs to the United States.

16      39.   On or about September 10, 2017, using coded language in a

17  telephone call, defendant MENDOZA TORREZ told defendant GRANADOS that

18  he wanted to meet in person the following day to discuss drug

19  trafficking business.

20      40.   On or about September 11, 2017, using coded language in a

21  telephone call, defendant GRANADOS told defendant BAZAN that

22  defendant MENDOZA TORREZ had returned to the United States and wanted

23  to talk to them about drug trafficking business.

24      41.   On or about September 11, 2017, in Rialto, California,

25  defendants BAZAN, GRANADOS, MENDOZA TORREZ, and a co-conspirator met

26  to discuss drug trafficking business.

27      42.   On or about September 15, 2017, using coded language in a

28  telephone call, defendant GRANADOS asked defendant MENDOZA TORREZ if

defendant GRANADOS's courier could deliver U.S. currency to defendant MENDOZA TORREZ the following day, to which defendant MENDOZA TORREZ agreed.

43.   On or about October 10, 2017, using coded language in a telephone call, defendant MARTINEZ informed defendant GRANADOS that law enforcement seized a parcel containing drug proceeds that co-conspirators had sent to defendant MARTINEZ, and that defendant MARTINEZ was not worried because no criminal charges had been brought yet.

44.   On or about October 10, 2017, using coded language in a telephone call, defendant RUIZ asked defendant GRANADOS what to do with one unit of drugs that had not been shipped, and defendant GRANADOS replied that he would ask if the New York co-conspirator wanted the drugs.

45.   On or about October 11, 2017, using coded language in a telephone call, a co-conspirator asked defendant MENDOZA TORREZ if he wanted to purchase a portion of a large shipment of drugs that was scheduled to come across the United States-Mexico border for $100,000; defendant MENDOZA TORREZ replied that he would check whether he had sufficient funds to purchase the drugs.

46.   On or about October 11, 2017, using coded language in a telephone call, defendant GRANADOS told defendant LUJANO to purchase a burner phone and to send defendant GRANADOS the phone number using a code.

47.   On or about October 11, 2017, using coded language in a telephone call, defendant GRANADOS told the New York co-conspirator that he had one unit of drugs remaining and asked the New York co-

conspirator to send defendant GRANADOS the address to which the drugs should be mailed.

48.   On or about October 11, 2017, using coded language in a telephone call, defendant GRANADOS told defendant RUIZ to prepare a unit of drugs to be mailed to the New York co-conspirator.

49.   On or about October 11, 2017, using coded language in a telephone call, defendant RUIZ told defendant GRANADOS that the unit of drugs was ready to be mailed to the New York co-conspirator and defendant RUIZ was just waiting for the shipping address from defendant GRANADOS.

50.   On or about October 12, 2017, at a post office in Riverside, California, a co-conspirator mailed a USPS parcel containing drugs to New York, New York.

51.   On or about October 12, 2017, using coded language in a telephone call, defendant RUIZ told defendant GRANADOS to let the New York co-conspirator know that the drug parcel would arrive the following day.

52.   On or about October 13, 2017, using coded language in a telephone call, defendant GRANADOS told defendant BARRAZA to call defendant BARRAZA's drug courier in New York to confirm that the drug parcel would be timely delivered to the New York co-conspirator.

53.   On or about October 13, 2017, using coded language in a telephone call, defendant BARRAZA told defendant GRANADOS that he had contacted his drug courier in New York and confirmed that the drug parcel would be there by noon.

54.   On or about October 13, 2017, using coded language in a telephone call, defendant GRANADOS told defendant LUJANO that a drug

transaction would take place in Ohio and ordered defendant LUJANO to purchase a burner phone to use during the transaction.

55.  On or about October 13, 2017, using coded language in a telephone call, defendant LUJANO told defendant GRANADOS that he had purchased a burner phone to use during a drug transaction.

56.  On or about October 13, 2017, using coded language in a telephone call, defendant HURT told defendant GRANADOS that he had already collected $70,000 in drug proceeds for defendant GRANADOS and was working on collecting more, to which defendant GRANADOS replied that defendant LUJANO was ready to pick up the drug proceeds from defendant HURT in Ohio.

57.  On or about October 17, 2017, using coded language in a telephone call, defendant HURT told defendant GRANADOS that he had collected $170,000 in drug proceeds for defendant GRANADOS.

58.  On or about October 18, 2017, using coded language in a telephone call, defendant HURT told defendant GRANADOS that he now had collected $175,000 in drug proceeds and agreed to get a burner phone for defendant FINLEY so that defendant FINLEY could communicate with defendant LUJANO.

59.  On or about October 19, 2017, using coded language in a telephone call, defendant GRANADOS told defendant ROBINSON that he would arrange a drug transaction between defendant ROBINSON and a co-conspirator for the following morning.

60.  On or about October 19, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that a co-conspirator called him to arrange a drug transaction, but that defendant ROBINSON did not understand the location.

14

61.   On or about October 19, 2017, using coded language in a telephone call, defendant GRANADOS told defendant ROBINSON that defendant GRANADOS spoke to the co-conspirator and that defendant ROBINSON would receive the time and location for the drug transaction before the meeting.

62.   On or about October 20, 2017, using coded language in a telephone call, defendant RUIZ asked defendant GRANADOS if defendant MENDOZA TORREZ had not come through with the drugs because defendant ROBINSON had called defendant RUIZ multiple times; defendant GRANADOS replied that he had just spoken to defendant MENDOZA TORREZ and the drug transaction would take place later that day.

63.   On or about October 20, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that a co-conspirator asked defendant ROBINSON if he was coming to pick up the drugs, but told defendant ROBINSON that he had to bring money to pay for the drugs.

64.   On or about October 20, 2017, using coded language in a telephone call, defendant GRANADOS told defendant MENDOZA TORREZ that the drug transaction had to be cancelled because the co-conspirators were asking for the full payment up-front.

65.   On or about October 20, 2017, using coded language in a telephone call, defendant GRANADOS told defendant ROBINSON that defendant MENDOZA TORREZ had changed the terms of the drug transaction.

66.   On or about October 20, 2017, using coded language in a telephone call, defendant MENDOZA TORREZ told defendant GRANADOS that he had to let other co-conspirators know if defendant GRANADOS was able to purchase the drugs; defendant GRANADOS replied that the price

15

was too high, but asked if defendant MENDOZA TORREZ could give just one type of drug to defendant ROBINSON, and defendant MENDOZA TORREZ agreed.

67.   On or about October 20, 2017, using coded language in a telephone call, defendant GRANADOS told defendant ROBINSON that he would receive at least one type of drug from defendant MENDOZA TORREZ's associate.

68.   On or about October 20, 2017, using coded language in a telephone call, defendant MENDOZA TORREZ asked defendant ROBINSON if he was ready to pick up the drugs, to which defendant ROBINSON replied that he was.

69.   On or about October 21, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that they (defendant MENDOZA TORREZ and others) did not have all of the drugs, but may get them later that day or the following day.

70.   On or about October 21, 2017, using coded language in a text message, defendant MENDOZA TORREZ told defendant GRANADOS to tell defendant ROBINSON that he would receive samples of two different types of drugs.

71.   On or about October 21, 2017, using coded language in a telephone call, defendant GRANADOS told defendant HURT that defendant LUJANO was in Akron, Ohio, and instructed defendant HURT to call defendant LUJANO to schedule a time to deliver drug proceeds to defendant LUJANO.

72.   On or about October 21, 2017, in Wadsworth, Ohio, defendant FINLEY, acting on behalf of defendant HURT, delivered to defendant LUJANO approximately $174,480 in drug proceeds, which were intended for defendant GRANADOS.

73.   On or about October 21, 2017, in Washington Township, Ohio, defendant LUJANO possessed approximately $174,480 in drug proceeds, which were intended for defendant GRANADOS.

74.   On or about October 22, 2017, using coded language in a telephone call, defendant ROBINSON told defendant MENDOZA TORREZ that he had received samples of drugs and asked when he would the remainder of the drugs; defendant MENDOZA TORREZ replied that it would not be that day.

75.   On or about October 24, 2017, at a post office in San Bernardino, California, defendant S. VERDUZCO mailed a USPS parcel containing approximately 4.814 kilograms of methamphetamine to Yonkers, New York.

76.   On or about October 28, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that defendant ESTRADA would be in Ohio in about three hours to accept drug proceeds on behalf of defendant GRANADOS.

77.   On or about October 28, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that defendant ESTRADA was already in Ohio and that defendant HURT, or his courier, should deliver drug proceeds to defendant ESTRADA.

78.   On or about October 28, 2017, using coded language in a telephone call, defendant GRANADOS told defendant HURT to deliver drug proceeds to defendant ESTRADA.

79.   On or about October 28, 2017, in Seville, Ohio, defendant FINLEY, acting on behalf of defendant HURT, met with defendant ESTRADA to conduct a drug transaction.

80.   On or about October 29, 2017, in Seville, Ohio, defendant FINLEY, acting on behalf of defendant HURT, delivered to defendant

17

ESTRADA approximately $142,900 in drug proceeds, which were intended for defendant GRANADOS.

81.  On or about October 29, 2017, using coded language in a telephone call, defendant HURT told defendant GRANADOS that the drug proceeds had been delivered to defendant ESTRADA earlier that day and that defendant HURT would send another $90,000 in drug proceeds to defendant GRANADOS the following day.

82.  On or about October 30, 2017, using coded language in a telephone call, defendant GRANADOS asked defendant ROBINSON if defendant ESTRADA was still in Ohio to pick up additional drug proceeds from defendant HURT, to which defendant ROBINSON replied that he would tell defendant ESTRADA to wait for defendant HURT.

83.  On or about October 30, 2017, in Cuyahoga County, Ohio, defendant ESTRADA possessed approximately $142,900 in drug proceeds, which were intended for defendant GRANADOS.

84.  On or about October 30, 2017, using coded language in a telephone call, defendant ROBINSON told defendant GRANADOS that law enforcement seized the drug proceeds from defendant ESTRADA.

85.  On or about October 30, 2017, using coded language in a telephone call, defendant GRANADOS told defendant HURT that law enforcement had seized the drug proceeds from defendant ESTRADA and that he believed law enforcement had followed defendant FINLEY after he delivered the drug proceeds to defendant ESTRADA.

86.  On or about October 31, 2017, in Beachwood, Ohio, defendant HURT possessed approximately $86,921 in drug proceeds, two digital scales, and drug ledgers.

87.   On or about October 31, 2017, in Cleveland, Ohio, defendant FINLEY possessed with the intent to distribute approximately 961.7 grams of heroin.

88.   On or about November 1, 2017, in Riverside, California, defendant MCPHERSON received a USPS parcel containing approximately $107,000 in drug proceeds.

89.   On or about December 14, 2017, using coded language in a telephone call, a co-conspirator told defendant MENDOZA TORREZ that they would start transporting drugs from Colombia to the United States again in January, and that defendants MENDOZA TORREZ and a co-conspirator should travel to Colombia to help arrange the transportation; defendant MENDOZA TORREZ said that he and the co-conspirator would travel to Colombia by the second week of January.

90.   On or about February 7, 2018, using coded language in a telephone call, defendant MENDOZA TORREZ asked a co-conspirator if he had any drugs for sale in Southern California.

91.   On or about February 7, 2018, using coded language in a telephone call, defendant MENDOZA TORREZ told a co-conspirator that he could distribute all of the heroin that the co-conspirator had for sale in Chicago, and they discussed the price and quality of the heroin.

92.   On or about February 8, 2018, using coded language in a telephone call, defendant MENDOZA TORREZ told a co-conspirator to update defendant MENDOZA TORREZ as soon as he knew whether a shipment of drugs would be delivered to Southern California that day.

93.   On or about February 9, 2018, using coded language in a telephone call, defendant MENDOZA TORREZ told a co-conspirator that defendant MENDOZA TORREZ wanted to speak to a third party about

19

transporting drugs from Central or South America to the United States on maritime vessels, and that defendant MENDOZA TORREZ was resuming his drug trafficking activities after taking a break in January.

94.   On or about February 13, 2018, using coded language in a telephone call, defendant MENDOZA TORREZ told a co-conspirator that he would call when he was getting ready to leave the United States so that defendant MENDOZA TORREZ could arrange a meeting with a third party about transporting drugs from Central or South America to the United States on maritime vessels.

95.   On or about February 27, 2018, in Birmingham, Alabama, a co-conspirator mailed a USPS parcel containing approximately $80,020 in drug proceeds to defendant MCPHERSON.

96.   On or about March 2, 2018, using coded language in a telephone call, defendant GRANADOS told defendant ORTIZ that a co-conspirator in Illinois (the "Illinois co-conspirator") had been released from jail, but had not yet called defendant GRANADOS, and suggested they (defendants GRANADOS and ORTIZ) may need to travel to Illinois to discuss drug trafficking business with the Illinois co-conspirator.

97.   On or about March 2, 2018, using coded language in a telephone call, defendant GRANADOS told a co-conspirator that the Illinois co-conspirator told defendant GRANADOS that law enforcement had seized all of their drug proceeds, and defendant GRANADOS admitted that part of the drug proceeds belonged to defendant GRANADOS.

98.   On or about March 5, 2018, in Philadelphia, Pennsylvania, a co-conspirator mailed a USPS parcel containing approximately $223,890

in drug proceeds, which had been packaged by defendant CASTELLANOZ, to defendant S. VERDUZCO.

99. On or about March 23, 2018, using coded language in a telephone call, defendant FAWEHINMI asked defendant GRANADOS what class mail a co-conspirator should use to send drug proceeds, to which defendant GRANADOS replied that he should use "rush" mail.

100. On or about March 26, 2018, using coded language in a telephone call, defendant FAWEHINMI told defendant GRANADOS that a USPS parcel containing drug proceeds was scheduled to be delivered that day.

101. On or about March 26, 2018, using coded language in a telephone call, defendant GRANADOS told defendant BARRAZA to call defendant WEBB because the USPS parcel containing drug proceeds from defendant FAWEHINMI was scheduled to be delivered that day.

102. On or about March 26, 2018, in Moreno Valley, California, defendant WEBB received a USPS parcel containing approximately $50,000 in drug proceeds.

103. On or about March 26, 2018, in Riverside, California, defendant WEBB delivered the USPS parcel containing approximately $50,000 in drug proceeds to defendant BARRAZA.

104. On or about April 6, 2018, using coded language in a telephone call, defendant BAZAN asked defendant GRANADOS for a status update on defendant LEYVA PEREZ's anticipated arrangement of a cocaine delivery.

105. On or about April 6, 2018, using coded language in a telephone call, defendant LEYVA PEREZ told defendant BAZAN that the cocaine delivery would take place the following day.

106. On or about April 6, 2018, using coded language in a telephone call, defendant RUIZ told defendant GRANADOS that he sent the price for cocaine to make sure that the cocaine was delivered.

107. On or about April 7, 2018, in Riverside, California, defendants BAZAN and LEYVA PEREZ met to discuss the exchange of approximately 19 kilograms of cocaine.

108. On or about April 7, 2018, using coded language in a telephone call, defendant LEYVA PEREZ told defendant GRANADOS that he was waiting for defendant S. VERDUZCO to arrive at defendant LEYVA PEREZ's shop to pick up approximately 19 kilograms of cocaine.

109. On or about April 7, 2018, using coded language in a telephone call, defendant BAZAN told defendant GRANADOS that defendant S. VERDUZCO was already at defendant LEYVA PEREZ's shop to pick up approximately 19 kilograms of cocaine.

110. On or about April 7, 2018, in San Jacinto, California, defendant LEYVA PEREZ loaded approximately 18.977 kilograms of cocaine into defendant S. VERDUZCO's car and delivered the car and cocaine to defendant S. VERDUZCO.

111. On or about April 7, 2018, using coded language in a telephone call, defendant LEYVA PEREZ told defendant GRANADOS that he had delivered the cocaine to defendant S. VERDUZCO and that defendant GRANADOS owed him $50,000 for the cocaine.

112. On or about April 7, 2018, in San Jacinto, California, defendant LEYVA PEREZ possessed approximately $18,308 in drug proceeds, a firearm, and approximately 220 rounds of ammunition.

113. On or about April 7, 2018, using coded language in a telephone call, defendant GRANADOS instructed a co-conspirator to get a new telephone number to evade law enforcement because defendant

1   GRANADOS believed law enforcement may be investigating their drug
2   trafficking organization.
3       114. On or about April 7, 2018, using coded language in a
4   telephone call, defendant GRANADOS told a co-conspirator that he
5   wanted to travel to Illinois because he was stressed out about the
6   seizure from the Illinois co-conspirator.
7       115. On or about April 9, 2018, using coded language in a
8   telephone call, defendant GRANADOS told a co-conspirator who was in
9   Illinois that the Illinois co-conspirator would meet her at 2:00 p.m.
10  to conduct a transaction involving drug proceeds.
11      116. On or about April 10, 2018, using coded language in a
12  telephone call, defendant GRANADOS told defendant ORTIZ he believed
13  defendant LEYVA PEREZ was cooperating with law enforcement, to which
14  defendant ORTIZ agreed.
15      117. On or about April 11, 2018, in Calimesa, California,
16  defendant MCPHERSON and a co-conspirator met with defendant MCMEANS
17  to conduct a drug transaction.
18      118. On or about April 11, 2018, in Banning, California,
19  defendant MCMEANS possessed with the intent to distribute
20  approximately 8.924 kilograms of methamphetamine and 3.934 kilograms
21  of cocaine.
22      119. On or about May 3, 2018, in Moreno Valley, California,
23  defendant WEBB received a USPS parcel containing drug proceeds.
24      120. On or about May 14, 2018, using coded language in a
25  telephone call, a co-conspirator asked defendant BARRAZA if a drug
26  courier could go to a stash house to pick up drugs, to which
27  defendant BARRAZA replied that he would pass the address of the stash
28  house to defendant ROMERO.

23

121. On or about May 14, 2018, using coded language in a telephone call, defendant BARRAZA told defendant ROMERO that he would send defendant ROMERO a phone number for the stash house operator so that defendant ROMERO could pick up drugs, to which defendant ROMERO agreed.

122. On or about May 14, 2018, using coded language in a series of text messages, defendant BARRAZA sent a phone number and code name for the stash house operator to defendant ROMERO.

123. On or about May 14, 2018, using coded language in a telephone call, defendant ROMERO told defendant BARRAZA that he had spoken to the stash house operator and was waiting for the stash house operator to send defendant ROMERO the address for the drug pick-up.

124. On or about May 14, 2018, using coded language in a telephone call, defendant BARRAZA told defendant ROMERO that the stash house operator was waiting for defendant ROMERO, to which defendant ROMERO replied that he would leave soon to pick up the drugs.

125. On or about May 14, 2018, in Perris, California, defendant ROMERO met with a co-conspirator to pick up drugs on behalf of defendant BARRAZA.

126. On or about May 14, 2018, in Moreno Valley, California, defendant ROMERO possessed with intent to distribute approximately 97.4 grams of heroin and 106.3 grams of fentanyl.

127. On or about May 17, 2018, using coded language in a telephone call, defendant MCPHERSON told defendant BAZAN that he was at a truck stop and that a drug transaction was going well.

128. On or about May 23, 2018, using coded language in a telephone call, defendant A. VERDUZCO told defendant BAZAN that he was waiting for defendant ORTIZ to pick up drug proceeds.

129. On or about May 23, 2018, using coded language in a telephone call, defendant A. VERDUZCO told defendant BAZAN that he was going to deliver drug proceeds to defendant ORTIZ the previous day, but he was short $80,000, and defendant CASTELLANOZ told defendant A. VERDUZCO not to deliver the money.

130. On or about May 23, 2018, using coded language in a telephone call, defendant BAZAN instructed defendant A. VERDUZCO to give whatever drug proceeds he had to defendant ORTIZ, to which defendant A. VERDUZCO agreed.

131. On or about May 23, 2018, using coded language in a telephone call, defendant BAZAN asked defendant A. VERDUZCO if he was still short $80,000 on the drug proceeds he had collected, to which defendant A. VERDUZCO replied that he was and explained that he was attempting to collect additional drug proceeds from a third party.

132. On or about May 23, 2018, using coded language in a telephone call, defendant BAZAN said that defendant S. VERDUZCO told him all of the drug proceeds were ready, but defendant A. VERDUZCO repeated that he was short $80,000.

133. On or about May 24, 2018, in Conshohocken, Pennsylvania, defendant ORTIZ possessed approximately $397,735 in drug proceeds, which he had received from defendant A. VERDUZCO.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT CAREY]

On or about November 30, 2016, in San Bernardino County, within the Central District of California, defendant JONATHAN DARNELL CAREY knowingly and intentionally distributed at least five kilograms, that is, approximately six kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT CAREY]

On or about December 19, 2016, in San Bernardino County, within the Central District of California, defendant JONATHAN DARNELL CAREY knowingly and intentionally distributed at least five kilograms, that is, approximately five kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

27

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II)]

[DEFENDANT CAREY]

On or about January 11, 2017, in San Bernardino County, within the Central District of California, defendant JONATHAN DARNELL CAREY knowingly and intentionally distributed at least 500 grams, that is, approximately 4.989 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT CAREY]

On or about January 26, 2017, in San Bernardino County, within the Central District of California, defendant JONATHAN DARNELL CAREY knowingly and intentionally distributed at least five kilograms, that is, approximately 5.012 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II)]

[DEFENDANT ORTIZ]

On or about February 14, 2017, in San Bernardino County, within the Central District of California, defendant ESTEVAN ORTIZ, also known as "Steve," "Stevie," "Wonder," and "Little Man," knowingly and intentionally distributed at least 500 grams, that is, approximately 2.971 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II)]

[DEFENDANT ORTIZ]

On or about February 14, 2017, in San Bernardino County, within the Central District of California, defendant ESTEVAN ORTIZ, also known as "Steve," "Stevie," "Wonder," and "Little Man," knowingly and intentionally distributed at least 500 grams, that is, approximately 3.998 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT BAZAN]

On or about March 31, 2017, in Riverside County, within the Central District of California, defendant RICARDO ALEJANDRO BAZAN, also known as "Ricky," "Chuco," and "Chu," knowingly and intentionally distributed at least five kilograms, that is, approximately 15.026 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT CAREY]

On or about April 1, 2017, in San Bernardino County, within the Central District of California, defendant JONATHAN DARNELL CAREY knowingly and intentionally distributed at least five kilograms, that is, approximately 5.011 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT S. VERDUZCO]

On or about October 24, 2017, in San Bernardino County, within the Central District of California, defendant STERLING TORRES-VERDUZCO, also known as "Primo," "Fatty's Cousin," and "Willy's Cousin," knowingly and intentionally distributed at least 50 grams, that is, approximately 4.814 kilograms, of methamphetamine, a Schedule II controlled substance.

34

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II)]

[DEFENDANT LEYVA PEREZ]

On or about April 7, 2018, in Riverside County, within the Central District of California, defendant EDULFO LEYVA PEREZ, also known as "Gallo," knowingly and intentionally distributed at least 5 kilograms, that is, approximately 18.977 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2(a)]

[DEFENDANTS BAZAN, GRANADOS, AND S. VERDUZCO]

On or about April 7, 2018, in San Bernardino County, within the Central District of California, defendants RICARDO ALEJANDRO BAZAN, also known as ("aka") "Ricky," "Chuco," and "Chu"; NOEL GRANADOS, aka "Noel," "Big Show," and "Show"; and STERLING TORRES-VERDUZCO, aka "Primo," "Fatty's Cousin," and "Willy's Cousin," aiding and abetting each other, knowingly and intentionally possessed with the intent to distribute at least five kilograms, that is, approximately 18.977 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT MCMEANS]

On or about April 11, 2018, in Riverside County, within the Central District of California, defendant EMANUEL ROBERT MCMEANS, III knowingly and intentionally possessed with the intent to distribute at least 50 grams, that is, approximately 8.924 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II)]

[DEFENDANT MCMEANS]

On or about April 11, 2018, in Riverside County, within the Central District of California, defendant EMANUEL ROBERT MCMEANS, III knowingly and intentionally possessed with the intent to distribute at least 500 grams, that is, approximately 3.934 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

1

                              COUNT FIFTEEN

2            [21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

3                     [DEFENDANTS BARRAZA AND ROMERO]

4        On or about May 14, 2018, in Riverside County, within the

5   Central District of California, defendants FAUSTO BARRAZA and ENRIQUE

6   GUZMAN ROMERO, aiding and abetting each other, knowingly and

7   intentionally possessed with the intent to distribute a mixture and

8   substance containing a detectable amount of heroin, a Schedule I

9   narcotic drug controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS BARRAZA AND ROMERO]

On or about May 14, 2018, in Riverside County, within the Central District of California, defendants FAUSTO BARRAZA and ENRIQUE GUZMAN ROMERO, aiding and abetting each other, knowingly and intentionally possessed with the intent to distribute fentanyl, a Schedule II narcotic drug controlled substance.

COUNT SEVENTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT LEYVA PEREZ]

On or about April 7, 2018, in Riverside County, within the Central District of California, defendant EDULFO LEYVA PEREZ, also known as "Gallo," knowingly possessed the following ammunition, in and affecting interstate and foreign commerce:

(a)   Fifty rounds of Winchester .40 caliber ammunition;

(b)   One hundred-fifty rounds of Federal .223 caliber ammunition; and

(d)   Twenty rounds of Mesko Spolka Akcyjna 5.56mm caliber ammunition.

Defendant LEYVA PEREZ possessed such ammunition knowing that he had previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, namely, Transportation or Sale of Marijuana, in violation of California Health and Safety Code Section 11360(a), in the Superior Court of the State of California, County of Riverside, case number HEF970151, on or about April 10, 1997.

SENTENCING ALLEGATIONS

[21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B)]

[DEFENDANTS GRANADOS AND HURT]

1.    Defendant NOEL GRANADOS, also known as ("aka") "Noel," "Big Show," and "Show," prior to committing the offenses alleged in Counts One and Twelve of this Indictment, had been finally convicted of the following serious drug felony as that term is defined and used in Title 21, United States Code, Sections 802(57), 841, and 851: Conspiracy to Distribute Cocaine, in violation of Title 21, United States Code, Section 846, in the United States District Court for the Central District of California, case number SA CR 10-00041-CJC, on or about February 7, 2011, for which defendant GRANADOS served a term of imprisonment of more than 12 months.  Defendant GRANADOS was released from a term of imprisonment for that offense within 15 years of the commencement of the offenses alleged in Counts One and Twelve of this Indictment.

2.    Defendant PHILLIP REGINALD HURT, aka "Dude," prior to committing the offense alleged in Count One of this Indictment, had been finally convicted of the following serious drug felony as that term is defined and used in Title 21, United States Code, Sections 802(57), 841, and 851: Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine, in violation of Title 21, United States Code, Section 846, in the United States District Court for the Northern District of Ohio, case number 1:10CR178, on or about May 12, 2011, for which defendant HURT served a term of imprisonment of more than 12 months.  Defendant HURT was released from a term of imprisonment for that offense within 15 years of the commencement of the offense alleged in Count One of this Indictment.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Sixteen of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense, including but not limited to the following:

i.    $185,185 in U.S. currency seized by law enforcement officials on or about April 4, 2017;

ii.   $174,480 in U.S. currency seized by law enforcement officials on or about October 21, 2017;

iii.  $142,900 in U.S. currency seized by law enforcement officials on or about October 30, 2017;

iv.   $80,020 in U.S. currency seized by law enforcement officials on or about March 1, 2018;

v.    $223,890 in U.S. currency seized by law enforcement officials on or about March 6, 2018; and

vi.   $18,308 in U.S. currency seized by law enforcement officials on or about April 7, 2018.

1        (b)   All right, title and interest in any and all property,

2 real or personal, used, or intended to be used, in any manner or

3 part, to commit, or to facilitate the commission of any such offense;

4 and

5        (c)   To the extent such property is not available for

6 forfeiture, a sum of money equal to the total value of the property

7 described in subparagraphs (a) and (b).

8     3.   Pursuant to Title 21, United States Code, Section 853(p),

9 any defendant so convicted, shall forfeit substitute property if, by

10 any act or omission of said defendant, the property described in the

11 preceding paragraph, or any portion thereof: (a) cannot be located

12 upon the exercise of due diligence; (b) has been transferred, sold

13 to, or deposited with a third party; (c) has been placed beyond the

14 jurisdiction of the court; (d) has been substantially diminished in

15 value; or (e) has been commingled with other property that cannot be

16 divided without difficulty.

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Seventeen of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any firearm or ammunition involved in or used in such offense; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been

//

//

//

//

//

1  placed beyond the jurisdiction of the court; (d) has been

2  substantially diminished in value; or (e) has been commingled with

3  other property that cannot be divided without difficulty.

4

5

6                              A TRUE BILL

7

8                              /s/

9                              Foreperson

10  NICOLA T. HANNA
    United States Attorney
11

12  *Brandon Fox*

13  BRANDON D. FOX
    Assistant United States Attorney
14  Chief, Criminal Division

15  CAROL A. CHEN
    Assistant United States Attorney
16  Chief, International Narcotics,
      Money Laundering, and Racketeering
17      Section

18  PUNEET V. KAKKAR
    Assistant United States Attorney
19  Deputy Chief, International Narcotics,
      Money Laundering, and Racketeering
20      Section

21  VICTORIA A. DEGTYAREVA
    Assistant United States Attorney
22  Cyber and Intellectual Property
      Crimes Section
23

24

25

26

27

28